UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
EDGAR MAURAD
Plaintiff,

SHEILA ORTIZ, INDIVIDUALLY
P.O. STEVEN HART, INDIVIDUALLY and
CITY OF WHITE PLAINS
Defendants,
---------------------------------------------------------------x

CIVIL ACTION NO.: 11 CIV 9125

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

Respectfully submitted,

LAW OFFICE OF MICHAEL H. JOSEPH, P.L.L.C.
Michael H. Joseph, Esq. (MJ8838)
203 East Post Road
White Plains, New York 10601
Tel: (914) 574 8330
Fax: (914) 358-5379

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT.............................................................................................1

STATEMENT OF FACTS......................................................................................................2

DISCUSSION...........................................................................................................................7

POINT I:   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS
           FALSE ARREST CLAIM, BOTH UNDER 42 U.S.C. § 1983
           AND UNDER STATE LAW...............................................................................9

A.   Plaintiff Did Not Violate  Penal Law § 240.20(6)..........................................................11

B.   Plaintiff's Alleged Altercation With The Security Guard  Did Not Violate
     Penal Law § 240.20(1)....................................................................................................14

C.   There Was No Probable Cause For The Plaintiff's Arrest and Defendants
     Are Not Entitled to Qualified Immunity, Therefore Plaintiff Is Entitled
     To Summary Judgment On His False Arrest Claim.........................................................16

POINT II:   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS MALICIOUS
            PROSECUTION ACTION AGAINST ORTIZ ...........................20

POINT III:   THE CITY OF WHITE PLAINS IS VICARIOUSLY
             LIABLE FOR THE OFFICER'S ACTIONS UNDER
             NEW YORK STATE LAW..............................................................................22

CONCLUSION........................................................................................................................22

## TABLE OF AUTHORITIES

Statutes:

42 U.S.C. § 1983..................................................................................................... 1, 9, 10, 22

Penal Law § 240.20 ..................................................................................................5, 11, 12, 14

F.R.C.P. Rule 56........................................................................................................ 7, 8


Cases:

Ackerson v. City of White Plains, 702 F.3d 15, 21 (2d Cir. 2012).....................................9, 10, 11

Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).........8

Anderson v. Creighton, 483 U.S. 635,  640, 107 S.Ct. 3034, 3039 (1987).................................18

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505,
91 L. Ed. 2d 202 (1986)............................................................................................................8

Beard v. Banks, 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L. Ed. 2d 697 (2006)...........................7

Bonide Products, Inc. v. Cahill, 223 F.3d 141, 145 (2d Cir. 2000)............................................19
Boyd v. City of New York, 336 F.3d 72 (2d Cir. 2003).............................................................20

Broughton v. State, 37 N.Y.2d 451, (1975)................................................................................16

Butz v. Economou, 438 U.S. 478, 493-94, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978)..................13

Carr v. Bradley, 2009 U.S. Dist. LEXIS 27065 (S.D. Oh 2009)............................................9, 18

Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011)................................................................7

Clark v. Coats & Clark, Inc. 929 F.2d 604, 608 (11th Cir. 1991).................................................8

Claude H. v. County of Oneida, 214 A.D.2d 964, 966 (N.Y. App. Div. 4th Dep't 1995).............22

Davis v. Rodriguez, 364 F.3d 424, 433-34 (2d Cir. 2004)..........................................................10
DePaula v. State of New York, 24 Misc. 3d 1222(A) (N.Y. Ct. Cl. 2009)...................................17

Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010)..........................................................16

Dinler v. City of New York. 2012 U.S. Dist. LEXIS 141851 (S.D.N.Y 2012)............................16

Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004)..............................................................9

First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 259, 88 S. Ct. 1575,
20 L. Ed. 2d 569 (1968)..................................................................................................................8
Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002)..................................................................10

Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)..................................................10

Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980).........................9

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1981)...........................................................................18

Jenkins v. City of NY, 2013 U.S. Dist. LEXIS 33331 (S.D.N.Y. 2013).......................................19

Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003)...................................................................10

Kendall v. The Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).......................................................8
Koch v. City of Del City, 660 F.3d 1228, 1239 (10th Cir. 2011)...................................................10

Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993)...............................................................16

Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996).........................................19, 21

Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001).............................7

Manganiello v. City of New York, 612 F.3d 149, 165 (2d Cir. 2010)......................................19, 21

Nardelli v. Stamberg, 44 N.Y.2d 500 (1978)................................................................................21

People v Chesnick, 302 NY 58, 60-61 (1950)................................................................................14

People ex rel. Fanelli v. Doe, 85 Misc. 2d 592, 596 (N.Y. City Ct. 1976)...................................16

People v. Gaskin, 306 N.Y. 837 (1954).........................................................................................12

People v. Munafo, 50 N.Y.2d 326, 331 (N.Y. 1980).................................................................14, 15

People v. Perry, 265 N.Y. 362, 365 (1934)................................................................................14, 15

People v. Pritchard, 27 N.Y.2d 246, 248 (1970)................................................................14, 15, 16

People v. Richardson, 2010 NY Slip Op 52283U, 2 (N.Y. City Crim. Ct. 2010).........................15

People v Stewart (Gillian), 2011 NY Slip Op 51445U, 1
(N.Y. App. Term 2 Dept. 2011)..................................................................................................13, 15

People v Szepansky, 25 Misc 2d 239 (NY Sup. 1960)....................................................................14

Posr v. Doherty, 944 F.2d 91, 97 (2d Cir.1991)..........................................................................10

Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir.1997).........................19, 20

Rohman v. N.Y.C. T. A.,215 F.3d 208 (2d Cir. 2000)..................................................................21

Ruffino v. City of Hoover, 891 F. Supp. 2d 1247, 1278 (N.D. Ala. 2012).........................9, 17, 21

Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001)...................................................................7

Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)............................................10

Tadco Constr. Corp. v. Dormitory Auth. of the State of New York, 700 F. Supp. 2d 253
(E.D.N.Y. 2010)..............................................................................................................................21

Watson v. Haverford Twp. Police Dep't, 2012 U.S. Dist. LEXIS 73473
(E.D. Pa. 2012)..........................................................................................................9, 11, 13,16, 17

Wesby v. District of Columbia, 841 F. Supp. 2d 20, 36 (D.D.C. 2012).......................9, 13, 18, 19

West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)................................9

Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).....................................................................10

Whren v. United States, 517 U.S. 806, 813-14, 116 S. Ct. 1769
135 L. Ed. 2d 89 (1998).............................................................................................................12, 18

## PRELIMINARY STATEMENT

This is a civil rights matter brought pursuant to 42 U.S.C. § 1983, in which Plaintiff seeks damages for false arrest, malicious prosecution and excessive force. The parties appeared before the Court on January 28, 2013 and set a briefing schedule, which required the Defendants to move for summary judgment by April 12, 2013 and required Plaintiff to submit his opposition and cross motion by May 10, 2013. As Defendants have failed to move for summary judgment, Plaintiff is now moving for summary judgment on his false arrest cause of action and his malicious prosecution cause of action against Oritz. Plaintiff concedes that there are factual issues on the excessive force cause of action and on the malicious prosecution cause of action against Hart. Plaintiff also moves for a finding that the City of White Plains is vicariously liable on the State causes of action.

While Plaintiff disputes the Defendants' contentions, for the purposes of summary judgment is statement of facts is taken from the Defendants' testimony for the purpose of establishing a lack of factual issues, since even under the Defendants' version, Plaintiff is entitled to summary judgment.

## STATEMENT OF FACTS

Defendants Sheila Ortiz (also known as Sheila Suarez[1]) and Stephen Hart, were police officers employed by the City of White Plains on January 15, 2011 and were working together on that date. (Ex. 1, p. 6-8, Ex. 3, p. 14). Ms. Ortiz testified that at about 1:57 a.m., on January 15, 2011, she and officer Hart were in a police car, the vicinity of 107 Mamaroneck Avenue, in White Plains and was generally assigned to monitor a bar at that location, but had not been dispatched to any disturbance. (Ex. 1, p. 9-11).

Ms. Ortiz testified that she observed the Plaintiff, Edgar Maruad being forcefully ejected from a bar called Cabo, at 107 Mamaroneck Ave, by the security staff. (Ex. 1, p. 12, 13). Both officers first saw Mr. Maurad as he was exiting the establishment. (Ex. 1, p. 12, Ex. 3, p. 18, 19). Neither of the officers observed, what if anything occurred inside the bar, nor did they at any point obtain any knowledge of what occurred inside the bar. (Ex. 1, p. 13, Ex. 3, p. 17, 18, 35, 36). Ms. Ortiz testified that the security guard was pushing Mr. Maurad and he was pushing the security guard back, although in the accusatory instrument which she signed under penalties of perjury on January 15, 2011, she stated that Plaintiff was trying to push and pull away from the security guard. (Ex. 1, p. 14, 39, 40). Mr. Hart testified that the security had two hands on the Plaintiff's chest, that Mr. Maurad was being pushed backwards and that Mr. Maurad was pushing the security guards arms away, while the security guard was pushing him. (Ex. 3, p. 19, 20). Mr. Hart testified that during this encounter, Mr. Maurad was not making any unreasonable noise, nor did Mr. Maurad push the security guard anywhere other than his hands. (Ex. 3, p. 20). In fact,

---

[1] At the time of the Plaintiff's arrest, the Defendant's name was Shiela Ortiz, however, after the Plaintiff's arrest, she married and began using her married name, which was Suarez. For consistency Plaintiff will refer to the Defendant as Ortiz.

Mr. Hart testified that Mr. Maurad's pushing was in response to the security guard having put his hands on Mr. Maurad. (Ex. 3, p. 35). When the officers approached Mr. Maurad, he was between ten to fifteen feet away from the bar. (Ex. 3, p. 20). Within a couple of seconds, the officers approached Mr. Maurad. (Ex. 1, p.17, 18). During the criminal trial, Ms. Ortiz testified that the Plaintiff and the security guard were not striking each other. (Ex. 2, p. 53). At her deposition, Ms. Ortiz was unable to recall whether anyone else was involved in the dispute between Mr. Maurad and the security guard. (Ex. 1, p. 19). According to Mr. Hart, when the officers approached, Maurad stopped interacting with the security guard, and the security guard went back inside the bar. (Ex. 3, p. 23). The officers then walked to the side of the establishment with Mr. Maruad, who at this point was no longer interacting with the security guard, and they told him that he had to leave the area and that if he did not leave the area, he would be arrested. (Ex. 1, p. 21, 22). Both Hart and Ortiz testified that they told Plaintiff to leave the area or he would be arrested even though they acknowledged that Maurad had not committed any crime and he was standing on the public sidewalk about 15 feet away from Cabo. (Ex.1, p. 22, Ex. 3, p. 24, 25, 37). Mr. Hart testified that Plaintiff was not under arrest when they told him to leave the area. (Ex. 3, p. 37). Mr. Hart testified that there were between ten to fifteen people waiting on line to get into the bar, but he had no recollection of anyone becoming alarmed or otherwise involved in the altercation between Plaintiff and the security guard. (Ex. 3, p. 26-29). Mr. Hart testified during the criminal trial, that the crowd did not become involved in the altercation between the Plaintiff and security guard at all, rather the crowd only became involved, when the officers interacted with Mr. Maurad. (Ex. 2, p. 44, 45). During the entire event, Hart testified that Plaintiff did not hit, strike or kick anyone, nor did he put his hands on any member of the public. (Ex. 3, p. 29, 30).

3

During the trial Ms. Ortiz testified that Mr. Maurad stated that he didn't do anything, then put his hands in his pocket and looked at the officers. (Ex. 2, p. 54). According to Ms. Ortiz, the officers told Plaintiff that he could not stay there (on the public sidewalk) and that Plaintiff did not move. (Ex. 1, p. 23). Mr. Hart testified that at this point, while Mr. Maurad standing on the public sidewalk, he was not breaking any law and he made no attempt to return to the bar. (Ex. 3, p. 38). Mr. Hart further testified that Mr. Maurad put his hands in his pocket, which was not a sign of aggression and that he was not fighting or engaging in any tumultuous conduct. (Ex. 3, p. 40, 42, 43). Mr. Hart testified that "at this point", when the officers were telling Mr. Maurad to leave and he was just standing on the sidewalk, a crowd began to gather around them. (Ex. 3, p. 39). Likewise, during the criminal trial, Mr. Hart testified that it was only after the officers had approached Mr. Maurad and told him to leave and he responded that he didn't nothing and was not leaving, that the crowd began to form. (Ex. 2, p. 26). Mr. Hart testified that the crowd was becoming alarmed because of the officer's interaction with Mr. Maurad. (Ex. 3, p. 41, 42). Mr. Hart testified that Mr. Maurad was not interacting with the crowd and that Mr. Maurad did not threaten anyone. (Ex. 2, p. 46, Ex. 3, p. 46). Ms. Ortiz testified that the officers then arrested Plaintiff for disorderly conduct. (Ex. 1, p. 25). Mr. Hart testified that he knew that a person violates the disorderly conduct statute by refusing to move on after being ordered to do so by a police officer, only if they are congregating with two or more people and that Mr. Maurad was not congregating with two or more people. (Ex. 3, p. 42).

Then Mr. Hart grabbed Plaintiff, threw him on the ground and arrested him for disorderly conduct. (Ex. 3, p. 48, 49).

On January 15, 2011, Ortiz prepared and signed an accusatory instrument in which she

4

charged Plaintiff with violating subdivision 1 of Penal Law § 240.20 which states that a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he engages in fighting or in violent, tumultuous or threatening behavior. (Ex. 5). In the accusatory instrument Ms Ortiz stated under penalties of perjury that Plaintiff "engaged in violent and tumultous behavior when he was escorted out of 107 Mamaroneck Av (Cabo) by security. Maurad was trying to push and shove security,  who was yelling at him to stop and that Maurad was pulling away from security and advised to leave the area. Maurad then stated that he was not leaving. Maurad was advised by police officers that he was no longer welcomed at Cabo and therefore should leave the area. Maurad stood there staring at police officers after being ordered several times to leave. Maurad's actions caused public alarm, resulting in a crowd forming to watch the incident." (Ex. 5).

Then on June 22, 2011, Ms. Ortiz signed a superceding violation, which in addition to charging Plaintiff with violating subdivision 1 of the disorderly conduct statute, also charged Plaintiff with violating Penal Law 240.20 (6). (Ex. 6).  Ms. Ortiz swore under penalties of perjury that Mr. Maurad on January 15, 2011 was congregating with other persons in a public place and refused to comply with a lawful order of the police to disperse. (Ex. 6). However, Ms. Ortiz testified in her deposition that Mr. Maurad was not congregating with anyone and that she did not know that subdivision 6 of the disorderly conduct statute only prohibited refusing to move on in response to an officer's command, where the individual was congregating with others. (Ex. 1, p. 46, 47).

Additionally, the superceding violation reiterated the same allegations concerning the alleged violation of subdivision 1. (Ex. 5, 6).  In both the initial violation information and the

5

superceding violation Ms. Ortiz stated that the Plaintiff was "trying to push and shove" the security guard, but she did not actually push or shove him. (Ex. 5, 6). On October 28, 2011, the Honorable Eric Press, a Judge of the City Court of White Plains dismissed the superceding violation and found that the accusatory instrument was facially insufficient. (Ex. 7).

In response to the Court having dismissed the superceding violation information, Ms. Ortiz, signed another superceding violation on November 7, 2011, in which she now alleged under penalties of perjury that Mr. Maurad, on January 15, 2011, pushed and shoved the security guard and that Mr. Maurad was yelling and that Mr. Maurad's tumultuos and violent actions caused public inconvenience, obstructed pedestrian traffic and caused people to be alarmed. (Ex. 8).

Following a bench trial, Plaintiff was acquitted of the charges. (Ex. 4).

## DISCUSSION

Plaintiff is entitled to summary judgment on his false arrest and malicious prosecution causes of action, both under Federal and State Law, against the individual defendants and against the City of White Plains based upon vicarious liability, under the State Law causes of action. Here, the officers' own testimony, establishes that Plaintiff was arrested and prosecuted without probable cause to believe that he had committed any crime or violation, as such, Plaintiff is entitled to summary judgment. While Plaintiff disputes the officers' version of the events, for the purposes of this motion, he adopts same since the officers' version establishes a prima facie case of false arrest and malicious prosecution.

F.R.C.P. Rule 56(a) states in pertinent part that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  No genuine issue of material fact exists where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001).

If the moving party satisfies this burden, the non-moving party must make a showing sufficient to establish the existence of each element to that party's case since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011). If the moving party carries his initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact. See Beard v. Banks, 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L. Ed. 2d 697 (2006); Celotex, 477 U.S. at 322; Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). In doing

so, the opposing party cannot "rely merely on allegations or denials" of the factual assertions of the movant. Fed.R.Civ.P. 56(e)(2).

The party moving for summary judgment bears the initial burden of showing "that there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law." Fed. R. Civ. R 56(a); see Clark v. Coats & Clark, Inc, 929 F.2d 604, 608 (11th Cir. 1991); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). Once the moving party has met his burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). This standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986); Kendall v. The Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). Thus, a party cannot rest on the allegations contained in his pleadings in opposition to a properly supported motion for summary judgment against him. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 259, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968).

**POINT I:**    **PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS FALSE ARREST CLAIM, BOTH UNDER 42 U.S.C. § 1983 AND UNDER STATE LAW**

Plaintiff is entitled to summary judgment on his false arrest claim, both under 42 U.S.C. § 1983 and under New York State Law because even under the Defendants' version of the events, they did not have probable cause to arrest him because his alleged conduct did not satisfy the elements of disorderly conduct. Moreover, the necessary elements of the charge of disorderly conduct were sufficiently well defined by New York State jurisprudence, such that it was clear to a  reasonable officer that even the conduct which defendants alleged occurred did not constitute disorderly conduct.

A growing number of Courts have recognized that where a Plaintiff can establish a lack of probable cause for his arrest and the officer is not entitled to qualified immunity, the Plaintiff is entitled to summary judgment on the false arrest claim. Ackerson v. City of White Plains, 702 F.3d 15, 21 (2d Cir. 2012); Watson v. Haverford Twp. Police Dep't, 2012 U.S. Dist. LEXIS 73473 (E.D. Pa. 2012); Carr v. Bradley, 2009 U.S. Dist. LEXIS 27065 (S.D. Oh 2009); Ruffino v. City of Hoover, 891 F. Supp. 2d 1247, 1278 (N.D. Ala. 2012); Wesby v. District of Columbia, 841 F. Supp. 2d 20, 36 (D.D.C. 2012).

To prevail on his 1983 claim, the plaintiff must show that he was deprived of a right secured by the Constitution or the laws of the United States and that the deprivation was caused by a person acting under the color of state law. See Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980); Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004); West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). To prevail on a § 1983 claim for either false arrest or malicious prosecution, a plaintiff must show a violation of

9

his rights under the Fourth Amendment by establishing the elements of the parallel claim under state law. Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) (false arrest); Davis v. Rodriguez, 364 F.3d 424, 433-34 (2d Cir. 2004) (malicious prosecution). Claims of false arrest and malicious prosecution implicate the Fourth Amendment right to be free from unreasonable seizures. Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003). An arrest is the most intrusive of Fourth Amendment seizures and is reasonable only if supported by probable cause. Koch v. City of Del City, 660 F.3d 1228, 1239 (10th Cir. 2011). The elements necessary to state a claim for false arrest under § 1983 are the same as those necessary to state a claim for false arrest under New York law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified. See Posr v. Doherty, 944 F.2d 91, 97 (2d Cir.1991); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).

Here, Plaintiff is entitled to summary judgment on his false arrest cause of action because he can demonstrate that even under the Defendants' version of the events, Plaintiff's conduct did not make out the elements of a violation of the disorderly conduct statute, as such, there was no probable cause for his arrest. Where an essential element of a criminal statute is missing, there is neither probable cause nor arguable probable cause for the arrest as a matter of law. Ackerson v. City of White Plains, 702 F.3d 15, 21 (2d Cir. 2012). To properly analyze a false arrest claim, the

10

Court must consider the elements of each crime with which the Plaintiff was charged and determine if the Officers had probable cause to believe those elements were satisfied by the Plaintiff's actions. Watson v. Haverford Twp. Police Dep't, 2012 U.S. Dist. LEXIS 73473 (E.D. Pa. 2012). In Ackerson, the Second Circuit reversed the District Court's grant of qualified immunity to officers who arrested the Plaintiff and granted Plaintiff partial summary judgment on liability where the Plaintiff was arrested for menacing and there was no evidence that the Plaintiff had taken any physically threatening actions, because a physical threat was a necessary element of menacing.

Here, Plaintiff was arrested and charged with violating subdivisions 1 and 6 of the disorderly conduct statute. Penal Law § 240.20 states a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof (1) he engages in fighting or in violent, tumultuous or threatening behavior or (6) he congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse.

Here, for the following reasons, the Plaintiff's alleged actions did not make out the elements of either section of the disorderly conduct statute consequently, there was no probable cause for his arrest. Rather, the undisputed record shows that he was arrested because he angered the police officers by not doing what they told him to do, which is not a crime. Merely disobeying a police officer's demands does not provide probable cause for an arrest where the Plaintiff's actions do not establish the elements of disorderly conduct. Watson v. Haverford Twp. Police Dep't, 2012 U.S. Dist. LEXIS 73473 (E.D. Pa. 2012). In Watson, the Court granted Plaintiff summary judgment on her false arrest cause of action where the Plaintiff was arrested

11

and charged with disorderly conduct where she ignored a police officers' request that she stop

blowing her leaf blower and show the officer identification and then called the police to report

that she was being harassed by the police. In a false arrest claim, whether the arresting officer

acts in good faith or in bad faith in effectuating the arrest is irrelevant. Whren v. United States,

517 U.S. 806, 813-14, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1998).

### A.  Plaintiff Did Not Violate  Penal Law § 240.20(6)

The officer's own testimony establishes that they arrested the Plaintiff for ignoring their

direction that he leave the public sidewalk, however, this conduct was not criminal nor did it

establish a violation of Penal Law § 240.20(6). Simply stated, Plaintiff did not violate Penal Law §

240.20(6) because was not part of any congregation and the allegations that he stood silently on a

public street are insufficient to establish an intent to cause public annoyance, inconvenience or alarm

or a reckless risk thereof. Penal Law § 240.20(6) states in pertinent part that a person is guilty of

disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or

recklessly creating a risk thereof, he congregates with other persons in a public place and refuses to

comply with a lawful order of the police to disperse.(emphasis added).The plain language of the

statute requires that the Defendant congregate "with other persons", i.e., it is a statutory requirement

that the Defendant congregate with at least two other "persons", as the multiple version of the word

signifies an intent to require more than one or two people be congregating for the statute to apply.

In People v. Gaskin, 306 N.Y. 837 (1954), the Court held that there was no congregation to support

a charge of disorderly conduct where at the time defendant was arrested, he was standing alone near

a group of boys when  the arresting officer asked defendant to move on and defendant said he was

"waiting for Joe".  The Court found in Gaskin found that since at this time he was absolutely alone,

and that the nearest person was at least fifteen feet from where defendant was standing, there was no congregation.

Here, Mr. Hart conceded that Plaintiff was not congregating with other persons, and he knew that the statute required a congregation of persons to be violated, nevertheless, he arrested Plaintiff anyway. Likewise, Ms. Ortiz seems to have been unaware that the law required a congregation of persons, but she simply believed that she could arrest anyone who didn't do what she told them to do. A police officer cannot escape liability if they failed to observe obvious statutory or constitutional limitations on his powers or if his conduct was a manifestly erroneous application of the statute. Butz v. Economou, 438 U.S. 478, 493-94, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978). Absent extraordinary circumstances, simply not knowing the legal requirements of the law for which an officer is making an arrest is not a defense. Wesby v. District of Columbia, 841 F. Supp. 2d 20, 38 (D.D.C. 2012). Here both the unambiguous statutory language and the caselaw, which was clearly established gave adequate notice that an officer could not arrest someone for ignoring a direction to move from a public sidewalk, unless the individual was actually congregating with other persons. As the Court found in Watson supra, merely disobeying an officer does not establish probable cause unless the other elements of a disorderly conduct statute are established.

Moreover, as discussed in B infra, the allegations that the crowd became "alarmed" was based on nothing other than the fact that the crowd which was already present formed to watch what was happening between Plaintiff and the officers, which is insufficient to constitute public alarm, as a matter of law. The mere presence of other people in the vicinity of an altercation is insufficient to establish the public dimension element of disorderly conduct. People v Stewart (Gillian), 2011 NY Slip Op 51445U, 1 (N.Y. App. Term 2 Dept. 2011). Likewise, where a crowd forms out of

13

curiosity to watch what is going on, that is not public alarm as a matter of law. People v. Pritchard,

27 N.Y.2d 246, 248 (1970); People v. Perry, 265 N.Y. 362, 365 (1934).

  B.    Plaintiff's Alleged Altercation With The Security Guard Did Not Violate
        Penal Law § 240.20(1)

    Here Plaintiff's alleged interaction with the security guard did not constitute a breach of

the peace, nor did his merely reflexive action of pushing away the security guard that was

pushing him constitute fighting, violent or tumultuous behavior. Penal Law § 240.20 (1) states a

person is guilty of disorderly conduct when, with intent to cause public inconvenience,

annoyance or alarm, or recklessly creating a risk thereof he engages in fighting or in violent,

tumultuous or threatening behavior.

    First, there was no public alarm caused by Plaintiff's interaction with the security guard,

since Hart clearly testified that crowd only reacted when the Plaintiff stood there staring at the

officers, at which point the altercation with the security guard had ended. Stated differently, the

people in the vicinity did not react at all to whatever happened between the Plaintiff and the

security guard, as such, the altercation between the security guard and the Plaintiff did not cause

any public alarm, as such, there was no public alarm and the dispute was purely contained to the

individual disputants.

    Jurisprudence has long recognized that the disorderly conduct statute has a requirement

that the purported disruptive behavior be of public rather than individual dimension. People v.

Munafo, 50 N.Y.2d 326, 331 (N.Y. 1980); People v Szepansky, 25 Misc 2d 239 (NY Sup. 1960);

see also, People v Chesnick, 302 NY 58, 60-61 (1950). The legislative intent of the disorderly

14

conduct statute was to reserve the disorderly conduct statute for situations that carried beyond the concern of individual disputants to a point where they had become a potential or immediate public problem. People v. Munafo, 50 N.Y.2d 326, 331 (1980). In People v. Perry, 265 N.Y. 362, 365 (1934), the Court held that there is no disorderly conduct, where a physical altercation annoyed no one, disturbed no one, interfered with no one and the conduct was not offensive to a crowd who voluntarily looked on, to gratify curiosity or a desire for amusement. The mere presence of other people in the vicinity of an altercation is insufficient to establish the public dimension element of disorderly conduct. People v Stewart (Gillian), 2011 NY Slip Op 51445U, 1 (N.Y. App. Term 2 Dept. 2011). In People v. Pritchard, 27 N.Y.2d 246, 248 (1970), the Defendant and another individual were fighting in the middle of a dance floor and were rolling around and striking at each other with their arms and legs and the Court held that the public disorder element was lacking because the scuffle was short-lived and there was no evidence of any disturbance or disorder among the others present, nor was there any allegation that the crowd which formed was motivated by anything other than curiosity. In Munafo, supra, the Court held that there was insufficient evidence of the public disorder element of disorderly conduct where the defendant did not attempt in any way to incite or involve the spectators, all of whom were present before the confrontation begun. In People v. Richardson, 2010 NY Slip Op 52283U, 2 (N.Y. City Crim. Ct. 2010), the Court held that allegations that a defendant yelled obscenities and a crowd formed to watch him, were insufficient to establish public alarm, annoyance or inconvenience.

Here, even accepting the Defendants' version of the events, Plaintiff was pushing away the hands of the security guard who was aggressively pushing him, as such, his actions were

merely reactionary. The Defendants' own testimony establishes that Plaintiff did not strike, kick

or even verbally threaten the security guard, but merely pushed away his hands and arms while

the guard was pushing him. It is well established that there is no disorderly conduct where the

alleged tumultuous or fighting behavior only occurs in response to provocation by another

individual. People v. Pritchard, 27 N.Y.2d 246, 248 (1970); People ex rel. Fanelli v. Doe, 85

Misc. 2d 592, 596 (N.Y. City Ct. 1976). In Pritchard, the Court held that the allegations were

insufficient to establish disorderly conduct, where the altercation was the instant and reflexive

reaction of defendant to another's physical provocation. People v. Pritchard, 27 N.Y.2d 246, 248

(1970). Here, since the Defendants' testimony, at best, establishes that the Plaintiff's pushing was

merely reactionary, there was no disorderly conduct.

      C.    There Was No Probable Cause For The Plaintiff's Arrest and Defendants Are Not
              Entitled to Qualified Immunity, Therefore Plaintiff Is Entitled To Summary
              Judgment On His False Arrest Claim

      As the Plaintiff's conduct did not violate the disorderly conduct statute, there was no

probable cause for his arrest. Where an arrest is made without a warrant, "the defendant in a false

arrest case bears the burden of proving probable cause as an affirmative defense. Dinler v. City of

New York. 2012 U.S. Dist. LEXIS 141851 (S.D.N.Y 2012); Dickerson v. Napolitano, 604 F.3d

732, 751 (2d Cir. 2010); citing Broughton v. State, 37 N.Y.2d 451, (1975). A showing of

probable cause thus requires proof of facts and circumstances that would convince a reasonable,

honest individual that the suspected person is guilty of a criminal offense. Lippay v. Christos.

996 F.2d 1490, 1502 (3d Cir. 1993). To properly analyze such a claim, the Court must consider

the elements of each crime with which the Plaintiff was charged and determine if the Officers

had probable cause to believe those elements were satisfied by the Plaintiff's actions. Watson v.

Haverford Twp. Police Dep't, 2012 U.S. Dist. LEXIS 73473 (E.D. Pa. 2012).

Merely disobeying a police officer's demands does not provide probable cause for an arrest where the Plaintiff's actions do not establish the elements of disorderly conduct. Watson v. Haverford Twp. Police Dep't, 2012 U.S. Dist. LEXIS 73473 (E.D. Pa. 2012). In Watson, the Court granted Plaintiff summary judgment on her false arrest cause of action where the Plaintiff was arrested and charged with disorderly conduct where she ignored a police officers' request that she stop blowing her leaf blower and show the officer identification and she in fact called the police to report that she was being harassed by the police. If a police officer has no arguable probable cause under the Fourth Amendment to arrest a plaintiff without a warrant for disorderly conduct, then the Plaintiff is entitled to summary judgment on his false arrest cause of action. Ruffino v. City of Hoover, 891 F. Supp. 2d 1247, 1278 (N.D. Ala. 2012). In Ruffino, the Court found a lack of even arguable probable cause to arrest the Plaintiff because even though the Plaintiff pushed an officer and used profanity, there was not public alarm or breach of the peace, as such there was not disorderly conduct and Plaintiff was entitled to summary judgment on his Fourth Amendment claim. Merely angering an officer does not provide probable cause to arrest for disorderly conduct. DePaula v. State of New York, 24 Misc. 3d 1222(A) (N.Y. Ct. Cl. 2009). In DePaula, the Court found the Defendant liable for false arrest, where the defendant, a court officer arrested the Plaintiff attorney, who had called him a prick. The Court in DePaula reasoned that since the comment did not disrupt the court proceedings or cause any public annoyance or alarm, there was no probable cause for the arrest.

Nor is the mere fact that an officer subjectively believed that an individual was doing something wrong a defense to a false arrest action because a warrantless arrest must be

17

predicated on particularized probable cause to believe an individual has committed a violation of

a crime or offense. Wesby v. District of Columbia, 841 F. Supp. 2d 20, 35 (D.D.C. 2012).

Particularized probable cause requires that a violation of the elements of an offense, as a pre-

requisite to liability. In a false arrest claim, whether the arresting officer acts in good faith or in

bad faith in effectuating the arrest is irrelevant to the probable cause determination. Whren v.

United States, 517 U.S. 806, 813-14, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1998). Where there is no

reasonable juror could find that there was probable cause to believe that the Plaintiff had

committed an offense, was  committing an offense, or was about to commit and offense, the

Plaintiff is entitled to summary judgment. Carr v. Bradley, 2009 U.S. Dist. LEXIS 27065 (S.D.

Oh 2009). Here, there was plainly no probable cause to arrest the Plaintiff.

Further Defendants are not entitled to qualified immunity.  For a defendant to receive

qualified immunity, it must be shown: (1) that the right alleged to be violated was not clearly

established when the violation occurred; or (2) if such right was clearly established, that a

reasonable person would not have known his acts violated it. Harlow v. Fitzgerald, 457 U.S. 800,

818 (1981). It is not required that the precise actions in question have been found unlawful in a

prior case, but rather that the unlawfulness of the acts must be apparent from law which exists at

the time of the acts. Anderson v. Creighton, 483 U.S. 635,  640, 107 S.Ct. 3034, 3039 (1987).

The contours of the right must be sufficiently clear that a reasonable official would understand

that what he is doing violates the right." Id.,  483 U.S. at 641, 107 S.Ct. at 3039.

The defendants are not entitled to qualified immunity because the right to be free from

arrest and prosecution in the absence of probable cause are long established constitutional rights

which were clearly defined prior to January, 2011 and no reasonable officer could conclude that

18

defendants actions were lawful. Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d

Cir.1997); Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996); Bonide Products,

Inc. v. Cahill, 223 F.3d 141, 145 (2d Cir. 2000). Here, given that the elements of the disorderly

conduct statute had been well established by New York case law for decades, no reasonable

officer could have believed it was reasonable to arrest the Plaintiff based upon the facts which

the Defendants allege occurred. Where the elements of a criminal law have been well defined by

the municipality's common law, for decades, qualified immunity should not be granted to the

Defendants, especially where officers failed to cite any extraordinary circumstances which might

have justified their failure to know the relevant law. Wesby v. District of Columbia, 841 F. Supp.

2d 20, 36 (D.D.C. 2012). Qualified immunity does not shield performance that was plainly

incompetent. Manganiello v. City of New York, 612 F.3d 149, 165 (2d Cir. 2010). If officers of

reasonable competence would have to agree that the information possessed by the officer at the

time of arrest did not add up to probable cause, the fact that it came close does not immunize the

officer. Jenkins v. City of NY, 2013 U.S. Dist. LEXIS 33331 (S.D.N.Y. 2013).

Based upon the foregoing, there was a lack of probable cause for Plaintiff's arrest and the

Defendants are not entitled to qualified immunity because they violated clearly established rights

and no reasonable officer would have believed Plaintiff's actions violated the disorderly conduct

statute.

**POINT II:    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS
MALICIOUS PROSECUTION ACTION AGAINST ORTIZ**

Plaintiff is entitled to summary judgment on his malicious prosecution action because he

can establish the elements of a malicious prosecution case against Ortiz, but concedes there are

factual issues with respect to Hart. The elements of a claim for malicious prosecution are that a

prosecution was initiated against the Plaintiff, that it was brought with malice and without

probable cause to believe that it could succeed and that the prosecution terminated in favor of the

Plaintiff. Boyd v. City of New York, 336 F.3d 72 (2d Cir. 2003). Here, it is undisputed that Ortiz

initiated the criminal action by signing the accusatory instrument. A police officer's act of filing

the charges establishes initiation of a prosecution. Ricciuti v. New York City Transit Auth., 124

F.3d 123, 130 (2d Cir. 1997). Likewise, as discussed above, there was no probable cause to

believe that the prosecution would be successful. Further, the Court actually dismissed the

criminal charge as facially insufficient and then Ortiz signed and filed a new violation which

alleged facts that even the defendants conceded did not occur, including (I) the allegation that

Plaintiff was yelling, (ii) the allegation that Plaintiff's interaction with the security guard caused

public inconvenience, obstructed pedestrian traffic and caused people to be alarmed. Therefore,

there is undisputed evidence that Ortiz's original superceding violation which did not allege that

the interaction with the security guard caused public alarm was dismissed. The evidence is also

undisputed that in response to the dismissal, she then filed another accusatory instrument in

which she alleged that Plaintiff was yelling and that his altercation with the security guard caused

public alarm, even though the Defendants' testimony makes clear that these events did not occur.

Likewise, even in the original superceding violation information, Ortiz claimed that Plaintiff was

congregating with others when she knew this was untrue. Anyone who knowingly provides false evidence is liable for initiating and continuing a malicious prosecution. Tadco Constr. Corp. v. Dormitory Auth. of the State of New York, 700 F. Supp. 2d 253 (E.D.N.Y. 2010); Rohman v. N.Y.C. T. A.,215 F.3d 208 (2d Cir. 2000). Likewise, since Plaintiff was acquitted of all charges, he has established a favorable termination.

Plaintiff has also established a prima facie case of malice. Malice means that the defendant commenced the proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served. Lowth v. Town of Cheektowaga, 82 F.3d 563 (2d Cir 1996). Malice may be proved by circumstantial evidence. Nardelli v. Stamberg, 44 N.Y.2d 500 (1978). Malice may be inferred from the want of probable cause, or from defendant's conduct, where such conduct will admit of no other reasonable construction. Ruffino v. City of Hoover, 891 F. Supp. 2d 1247, 1273 (N.D. Ala. 2012). Malice may be shown where the prosecution was undertaken in reckless disregard of the plaintiff's rights or where an officer offers inexplicable false statements about the Plaintiff's conduct. Manganiello v. City of New York, 612 F.3d 149, 164 (2d Cir. 2010). Here, Plaintiff has established that Ortiz recklessly violated the Plaintiff's rights by making factual allegations which she had to have known were not true.

Ortiz is not protected by qualified immunity on the malicious prosecution claim. The right to be free from prosecution absent probable cause is a clearly established right and no reasonable officer could mistake that it was lawful to provide a statement to the prosecutor which contained false allegations about the Plaintiff's conduct. Manganiello v. City of New York, 612 F.3d 149, 164 (2d Cir. 2010). Therefore, Plaintiff is entitled to summary judgment on the malicious prosecution cause of action against Ortiz.

21

**POINT III:   THE CITY OF WHITE PLAINS IS VICARIOUSLY LIABLE FOR THE OFFICER'S ACTIONS UNDER NEW YORK STATE LAW**

While § 1983 does not recognize vicarious liability and Plaintiff must establish a

Monnell policy, the same is not true under state law, which recognizes vicarious liability so long

as the officer was acting in the course and scope of their employment. See Claude H. v. County

of Oneida, 214 A.D.2d 964, 966 (N.Y. App. Div. 4th Dep't 1995). Here there is no genuine

dispute that the officers were acting in the course and scope of their employment, as such, the

City of White Plains is vicariously liable.


**CONCLUSION**

For the foregoing reasons, Plaintiff's motion should be granted in its entirety.



Dated: White Plains, N.Y.
       May 10, 2013


                              Yours etc.,

                              LAW OFFICE OF MICHAEL H. JOSEPH, P.L.L.C.

           BY:   _____
                              Michael H. Joseph, Esq.
                              203 East Post Road
                              White Plains, New York 10601
                              Tel: (914) 574 8330
                              Fax: (914) 358-5379